IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FLORRIE JOHNSON,                *
                                *
    Plaintiff,                  *
                                *
        v.                      *     CV 116-165
                                *
COLUMBIA COUNTY, GEORGIA; CLAY  *
N. WHITTLE, Columbia County     *
Sheriff in his Official         *
Capacity; JOHN DOES 1-6; JANE   *
DOES 1-6; and XYZ Corporation,  *
                                *
    Defendants.                 *

**O R D E R**

Before the Court is a motion for summary judgment filed by Defendants Columbia County, Georgia ("Columbia County") and Clay N. Whittle, in his official capacity as Sheriff of Columbia County (collectively, "Defendants"). (Doc. 17.) The Clerk of Court gave Plaintiff timely notice of Defendants' summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 20.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Plaintiff filed a response in opposition and Defendants filed a reply in support. (Docs. 27, 30.) The time for filing materials in opposition has

expired, and the motion is ripe for consideration. Upon consideration of the evidence of record, relevant law, and the parties' respective briefs, Defendants' motion for summary judgment is **GRANTED IN PART**.

## I. BACKGROUND

On the evening of September 13, 2014, Sergeant Bobby Bradford of the Columbia County Sheriff's Office responded to a complaint in Martinez, Georgia regarding a hit and run accident involving a drunk driver. (Bradford Decl., Doc. 18-3, ¶ 3; Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("PRDSMF"), Doc. 28,[1] ¶ 2.) During the course of his investigation, Sergeant Bradford encountered Plaintiff and requested her identification. (Bradford Decl. ¶¶ 4-6; PRDSMF ¶¶ 3-4.) Sergeant Bradford ran a background check on Plaintiff, which revealed an outstanding bench warrant for Plaintiff's arrest.[2] (Bradford Decl. ¶ 6; PRDSMF ¶ 4.) He arrested Plaintiff based on the bench warrant and transported her to the Columbia County Detention Center (the "Detention Center"). (Bradford Decl. ¶ 7; PRDSMF ¶ 5.)

---

[1] (Compare with Defendants' Statement of Undisputed Material Facts, Doc. 19.)
[2] On or about September 18, 2013, the State Court of Richmond County, Georgia issued a bench warrant for Plaintiff's arrest for her alleged failure to appear in that court. (Doc. 18-1, at 20; PRDSMF ¶ 1.) While Plaintiff admits that the bench warrant was issued, she denies that she failed to appear in court and asserts that its issue was improper. (Johnson Dep., Doc. 27-1, at 31-33; PRDSMF ¶¶ 1, 4.)

2

Upon her arrival at the Detention Center at approximately 1:12 am on September 14, 2014, Plaintiff was placed in a holding cell in the booking area. (Woods Decl., Doc. 18-4, ¶¶ 3-4; PRDSMF ¶¶ 8-9.) After several hours in this holding cell, Plaintiff - who is diabetic and was prescribed a number of different medications for this and other medical issues - had her blood sugar level tested by a female officer using Plaintiff's blood glucose monitor. (Johnson Dep., Doc. 27-1, at 37-39, 51.) This testing revealed a blood sugar level of 78; Plaintiff was immediately retested and indicated a blood sugar level of 38.[3] (Id.) This female officer left the area and Plaintiff subsequently experienced a diabetic seizure. (Id. at 38-39, 51, 53, 65; see also PRDSMF ¶ 10.) Plaintiff managed to press the call button in the holding cell for help and expressed that she "needed something because [her blood] sugar was low." (Johnson Dep. at 65; PRDSMF ¶ 11.) Nurse Jennifer Sturkey came into the holding cell and attempted to give Plaintiff medication, which Plaintiff refused.[4] (Johnson Dep. at 62, 65-66; see also PRDSMF ¶¶ 15, 17-18.) Nurse Sturkey believed that

---

[3] Plaintiff testified that the blood sugar level she tries to maintain ranges between 90 (a "fasting level") and 190 (where it should be "two hours after a meal"). (Johnson Dep. at 47; see also PRDSMF ¶ 27.) Plaintiff further testified that a blood sugar level of 38 is a "comatose level." (Johnson Dep. at 38.)
[4] Nurse Sturkey was employed by Southern Health Partners, a private company contracted to provide medical care for inmates in the Detention Center. (Woods Decl. ¶ 7; PRDSMF ¶ 12.) Plaintiff testified that Nurse Sturkey was attempting to give Plaintiff improper medication (i.e., medication that would lower - as opposed to raise - her blood sugar level) by "cram[ming it] down [her] throat." (Johnson Dep. at 62, 65-66.)

3

Plaintiff was not actually in distress and remarked that Plaintiff was "just fine, she's just faking it." (Johnson Dep. at 66, 69; see also PRDSMF ¶¶ 19-23.) Plaintiff testified that, despite her continued diabetic seizure, "everybody left and slammed the door." (Johnson Dep. at 70.) Plaintiff laid in a stupor on the holding cell's floor but was able to muster the strength to call for help again. (Id.) In response, a Detention Center guard came into the area and gave Plaintiff apple juice and two oranges in an attempt to raise her blood sugar level. (Id. at 44-45, 51-52, 70-71; PRDSMF ¶ 24.)

Plaintiff was subsequently placed on medical segregation so that her medical condition could be more closely supervised. (PRDSMF ¶¶ 25, 28-29.) Deputy Jailer Miriam Dunne was responsible for preparing Plaintiff for confinement in the Detention Center's medical segregation area. (Woods Decl. ¶¶ 9, 11; PRDSMF ¶¶ 29-30.) As part of this preparation, Deputy Dunne took Plaintiff to the booking area's showers, sprayed her with a delousing agent, and then allowed her to wash herself briefly.[5] (Johnson Dep. at 53-65; Dunne Dep., Doc. 21-2, at 55-58; PRDSMF ¶¶ 31-35.) Deputy Dunne sprayed Plaintiff in the face with the delousing agent but did not provide her with sufficient time to

---

[5] Plaintiff testified that while she was preparing to undress, a male officer, Gilbert Lopez, was present and pulled her pants down from behind. (Johnson Dep. at 53-54.) Officer Lopez left the room shortly thereafter but Deputy Dunne held the door to the shower area open, which allowed another male officer and a male inmate to view Plaintiff in a state of undress. (Id. at 55, 57-59, 61-62.) Plaintiff also alleges that Deputy Dunne laughed, made offensive comments, and "kept snapping her fingers like [Plaintiff] was a dog" while Plaintiff showered. (Id. at 55-56, 62-65.)

4

wash her face or grant her requests for a Benadryl or other medication, which caused her skin to turn red and blister.[6] (Johnson Dep. at 44, 55-57, 59-61, 75, 78, 86, 148.) Plaintiff submitted written grievances while at the Detention Center. (Id. at 88-89.) At approximately 9:00 pm on September 14, 2014, an officer with the Richmond County Sheriff's Office arrived at the Detention Center and took custody of Plaintiff. (Mosley Dep., Doc. 21-4, at 25 & Ex. 3; see also PRDSMF ¶ 37.)

On August 24, 2016, Plaintiff initiated this action in the Superior Court of Columbia County, Georgia, alleging a claim for deliberate indifference to her medical needs under 42 U.S.C. § 1983 as well as various state law claims. (Doc. 1-5.) In her complaint, Plaintiff named as defendants: (i) Columbia County; (ii) Sheriff Whittle; (iii) John Does 1-6; (iv) Jane Does 1-6; and (v) XYZ corporation. (Id.) Defendants timely removed this action to this Court on September 30, 2016, asserting federal question jurisdiction exists over Plaintiff's Section 1983 claim and supplemental jurisdiction exists over her state law claims. (Doc. 1.) On April 6 and May 19, 2017, Plaintiff filed motions requesting leave to substitute party defendants, which the United States Magistrate Judge denied on July 5, 2017.[7] (Docs.

---

[6] Plaintiff testified that, as a result of this incident, her skin peeled and was painful for approximately two weeks and that she has permanent scarring on her face. (Johnson Dep. at 107-10.)
[7] Notably, in the Scheduling Order dated November 10, 2016, the Magistrate Judge set November 29, 2016 as the deadline for filing motions to amend or add parties. (Doc. 8, as subsequently amended by Doc. 13.) In her post-deadline motions for leave to substitute party defendants, Plaintiff sought

5

11, 15, 22.) On June 16, 2017, Defendants filed their present motion for summary judgment. (Doc. 17.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

---

to substitute Nurse Sturkey and Deputy Dunne for Jane Does 1 & 2 and Officer Lopez for John Doe 1. (Docs. 11, 15.) In its Order denying these motions, the Magistrate Judge concluded that Plaintiff had not shown good cause sufficient to amend the aforementioned deadline and that - even if good cause were demonstrated - the proposed amendments would be futile because the statute of limitations had run on her claims against the proposed substitute defendants (as the claims against them would not relate back to the time of filing of her complaint). (See Doc. 22, at 4-8.)

[record before the court] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. Anderson, 477 U.S. at 255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). "The non-moving party cannot create a genuine issue of

7

material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" Bryant v. Dougherty Cty. Sch. Sys., 382 F. App'x 914, 917 (11th Cir. 2010) (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008); and Anderson, 477 U.S. at 249-50).

## III. DISCUSSION

### A. Plaintiff's Section 1983 Claim

In her complaint, Plaintiff alleges that Defendants were deliberately indifferent to her medical needs in violation of her constitutional rights and seeks money damages under 42 U.S.C. § 1983. (Doc. 1-5, ¶¶ 16-21, 45-49.) Defendants assert that their alleged liability for Plaintiff's aforementioned claim is premised solely upon theories of *respondeat superior* or vicarious liability and that they therefore are not liable for the alleged unconstitutional actions of their employees and/or subordinates under Section 1983. (See Doc. 18, at 13-17; Doc. 30, at 2-4.) The Court agrees with Defendants.

While counties, municipalities, and other local government entities[8] may be subject to liability under Section 1983, *respondeat superior* and vicarious liability are not viable

---

[8] "Though Sherriff [Whittle] is the named defendant, 'a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents.'" See Goodman v. Kimbrough, 718 F.3d 1325, 1335 n.4 (11th Cir. 2013) (quoting Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (per curiam)); see also Brown, 188 F.3d at 1290 n.1 ("[A] suit against a government officer in his official capacity is simply a suit against the relevant governmental entity." (citing Kentucky v. Graham, 473 U.S. 159 (1985)).

8

theories thereunder. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004); see also Goodman v. Kimbrough, 718 F.3d 1325, 1335 (11th Cir. 2013). Rather, "to impose Section 1983 liability on a [county or] municipality, a plaintiff "must show: (1) that [her] constitutional rights were violated; (2) that the [county or] municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." See McDowell, 392 F.3d at 1289 (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Similarly, to establish liability against a county sheriff sued in his official capacity under Section 1983, a plaintiff must "prove that [s]he suffered a constitutional deprivation as the result of: '(1) an action taken or policy made by an official responsible for making final policy in that area of the [s]heriff's [d]epartment's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker.'" Goodman, 718 F.3d at 1335 (alterations omitted) (quoting Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" McDowell, 392 F.3d at 1290 (11th Cir. 2004) (quoting Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999); see also Craig v. Floyd Cty., 643 F.3d 1306, 1311 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident

9

involves several employees of the municipality."); <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy." (citations omitted)).

Here, Plaintiff admits "Sheriff Whittle had no direct dealings with Plaintiff on September 14, 2014" and "was not aware of any specific medical need that [P]laintiff might have had, and he was not directly involved in any decision regarding [P]laintiff's medical care." (PRDSMF ¶¶ 59-60.) Further, Plaintiff admits it was official policy "to provide adequate medical care to all inmates in the Detention Center" and "that all inmates are [to be] provided with health and medical services by medically trained personnel." (<u>Id.</u> ¶¶ 39, 46.) Plaintiff also admits official policy "specifically prohibit[ed] the abuse of inmates at the Detention Center" including "acts of personal abuse, personal injury, and harassment." (<u>Id.</u> ¶ 40.) Moreover, Plaintiff admits that it would be a "violation of policy to deny an inmate medication that was medically necessary" or to "subject an inmate to abuse, injury, or harassment." (<u>Id.</u> ¶¶ 53, 58.)

Nevertheless, Plaintiff asserts that her deliberate indifference claim remains viable because "official policies are not always followed as they should be." (Doc. 27, at 10.) She further asserts that "in [her] dealings alone with Columbia County, she has demonstrated a litany of incidents where the jail policies that [sic] were not followed by Columbia County

jail employees." (Id.) She submits that "Columbia County was aware of these issues" because "[t]he mistreatments and actions that were taken against the jail policies and procedures were reported by [Plaintiff]." (Id. (citing Johnson Dep. at 89).)

Plaintiff, however, has failed to provide any evidence of any unconstitutional activity other than those she personally suffered on September 14, 2014, which by itself is insufficient to impose liability against Defendants. See Craig, 643 F.3d at 1311. Indeed, she "has failed to present any evidence of a series of constitutional violations from which indifference can be inferred." See id. at 1312 (internal quotations and citations omitted). Rather, she "relies on her own experience, which is, at most, proof of a single incident of unconstitutional activity" and therefore inadequate to impose liability under Section 1983. See id. (internal quotations, citations, and alterations omitted); see also Goebert v. Lee Cty., 510 F.3d 1312, 1331-33 (11th Cir. 2007) (summary judgment granted to sheriff sued in his official capacity where there was no evidence that sheriff had actual knowledge that his policies were being implemented in way that ignored a detainee's medical needs or that violation of policies were so widespread that constructive knowledge could be imputed to sheriff); Coons v. Gwinnett Cty., 657 F. App'x 856, 860 (11th Cir. 2016) (plaintiff's own experience insufficient to impose liability against county); Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (same). Moreover, while Plaintiff testified that she

submitted written grievances during her confinement, she has not provided any evidence regarding, *inter alia*: (i) the contents of those written grievances; (ii) whether Defendants had notice of those written grievances; and (iii) whether any deliberate indifference of which she now complains occurred subsequent to her submission of those written grievances. Accordingly, Plaintiff has failed to demonstrate an action taken – or the existence of a policy, custom, or practice held or otherwise adopted – by Defendants that constituted deliberate indifference to her constitutional rights.[9] Therefore, Defendants are entitled to summary judgment on Plaintiff's claim of deliberate indifference under Section 1983.[10]

---

[9] While Plaintiff did not pursue claims against Sheriff Whittle in his individual capacity, she would fare no better had she done so because supervisory officials sued in their individual capacities "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted). Rather, a supervisor may be individually liable where "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." Id. This "causal connection" may exist where: (a) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do;" (b) the "supervisor's custom or policy results in deliberate indifference to constitutional rights;" or (c) "the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal quotations, citations, and alterations omitted). As previously noted, Plaintiff has failed to cite to any particular part of materials in the record that demonstrates that the alleged violations of her constitutional rights were caused by Sheriff Whittle's: (i) personal participation; (ii) failure to correct a history of widespread abuse; (iii) official or adopted customs, policies, or practices; (iv) directives to his subordinates; or (v) failure to stop unconstitutional activity of which he was aware.

[10] Because Plaintiff's claims under Section 1983 fail, so does her related request for attorney's fees. See, e.g., 42 U.S.C. § 1988(b). Plaintiff also explicitly withdrew her claim for punitive damages. (Doc. 27, at 11.)

12

## B. Plaintiff's State Law Claims

In addition to her Section 1983 claim, Plaintiff also asserted several state law claims. The Court has supplemental jurisdiction over these state law claims. 28 U.S.C. § 1367. Nevertheless, having found that Defendants are entitled to summary judgment on Plaintiff's federal law claim, the Court declines to exercise jurisdiction to resolve Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3) (indicating that a court may decline to exercise supplemental jurisdiction if it has dismissed all claims under which it has original jurisdiction); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citing L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)); McDuffie v. Broward County, 654 F. App'x 408, 411 (11th Cir. 2016) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction." (citations omitted)).

## IV. CONCLUSION

Based upon the foregoing and due consideration, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's federal law claim. The Court declines to exercise

13

supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (doc. 17) is **GRANTED IN PART**. The Clerk is directed to **REMAND** this case to the Superior Court of Columbia County.[11]

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of January, 2018.

```
                                    _____
                                    J. RANDAL HALL, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF GEORGIA
```

---

[11] *Florrie Johnson v. Columbia County, Georgia, et al.*, Superior Court of Columbia County, Georgia, Civil Action No. 2016-ECV-0068.